# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MARTA E. OTERO,**

<strong>Plaintiff,</strong>

**v.**                                    **Case No. 6:14-cv-857-Orl-18KRS**

**COMMISSIONER OF SOCIAL
SECURITY,**

<strong>Defendant.</strong>

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by

Plaintiff Marta E. Otero seeking review of the final decision of the Commissioner of Social

Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy

of the record before the Social Security Administration ("SSA"), Doc. Nos. 14, 16 and the parties'

Joint Memorandum.[1]   Doc. No. 22.

## PROCEDURAL HISTORY.

In 2008, Otero filed an application for benefits under the Federal Old Age, Survivors and

Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.* She alleged that she became

disabled on June 1, 2007.   R. 315.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement
of the pertinent facts in the record.   Doc. No. 17.   Counsel for Plaintiff was ordered to identify and frame,
in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel
for the Commissioner was required to respond to each of those issues in the format set forth in the
Scheduling Order.   *Id.* at 4.

1

After her application was denied initially and on reconsideration, Otero asked for a hearing before an Administrative Law Judge ("ALJ").   R. 167.   An ALJ held a hearing on June 9, 2010.   Otero, accompanied by an attorney, testified at the hearing.   R. 71-90.   Thereafter, the ALJ issued a decision finding that Otero was not disabled.   Doc. No. 136-47.   On review, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings with specific instructions to the ALJ.   Doc. No. 155-56.

On May 16, 2012, the ALJ held another hearing.   Otero, accompanied by an attorney, and a vocational expert ("VE") testified.   R. 45-70.

After considering the hearing testimony and the evidence in the record, the ALJ found that Otero was insured under OASDI through December 31, 2009.   The ALJ concluded that Otero had not engaged in substantial gainful activity from the alleged disability onset date through the date last insured.   R. 22.

The ALJ found that Otero had the following severe impairments: arthralgias; fibromyalgia; arthritis; degenerative disc disease of the lumbar spine; and, an affective mood disorder. *Id.*   The ALJ found that Otero's mental impairments would result in mild limitations in activities of daily living and social functioning, moderate difficulties in concentration, persistence or pace with no episodes of decompensation of extended duration.   R. 23-24.   These impairments, individually and in combination, did not meet or equal a listed impairment.   R. 22.

The ALJ found that Otero had the residual functional capacity to perform a wide range of sedentary work, as follows:

> She can lift and carry 10 pounds. She can sit 6 hours and stand and/or walk 2 hours in an eight-hour workday. She should avoid frequent ascending and descending stairs. Due to mild to moderate pain and medication side effects, she should avoid hazards in the workplace such as unprotected areas of moving machinery, heights, ramps,

2

> ladders, scaffolds; and on the ground, unprotected areas of holes and pits. She should avoid activities requiring both gross and fine continuous manipulation with handling, reaching, feeling, pushing/pulling, and fingering with both hands. She can perform each of the following postural activities occasionally: balancing, stooping, crouching, kneeling, and crawling, but not climbing. She has moderate non-exertional mental limitations which affect her ability to concentrate upon complex or detailed tasks but she would remain capable of understanding, remembering, and carrying out simple job instructions; making work related judgments and decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting. She would require work which is simple and unskilled, or low semi-skilled (SVP=3) in nature. The claimant should be allowed to use a cane.

R. 24.

The ALJ determined that Otero could not return to her past relevant work. R. 35. After considering the testimony of the VE, the ALJ found that there were sedentary, unskilled jobs available in the national economy that Otero could perform, specifically dresser, call-out operator, and surveillance system monitor. R. 36. Therefore, the ALJ concluded that Otero was not disabled. *Id.*

Otero sought review of the ALJ's decision by the Appeals Council. On August 20, 2013, the Appeals Council found no reason to review the ALJ's decision. R. 13-15. The Appeals Council extended the time for Otero to seek review in this Court. R. 2, 8.

Otero now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Otero having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and

whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' Joint Memorandum and the ALJ's decision, which statement of facts I incorporate by reference.   Accordingly, I will only summarize facts pertinent to the issue raised to protect Otero's privacy to the extent possible.

Otero was born in 1960.   R. 74.   She completed high school and had medical assistant training.   R. 75.   She previously worked as a receptionist at a doctor's office.   R. 76.

During the ALJ's hearings, Otero complained of pain and swelling throughout her body. R. 50, 77-78.   Medication relieved her symptoms only slightly.   R. 50.   She could sit for about 15 minutes.   R. 82. She could stand for 10 to 15 minutes without having to move.   R. 52, 83. She had used a walker since January 2010, and she used a cane during the ALJ's hearing in 2012.   R. 52-53, 83. She could walk 20 to 50 minutes for only relatively short distances.   R. 52, 84. She could sometimes bend but not squat. R. 52, 84.   She could lift a gallon of milk using both hands. She had problems gripping and lifting with her hands.   R. 53, 84.

She also reported having seizures.   R. 51, 78-79.   She could not drive due to her seizure disorder.   R. 54-55, 75.   She was also being treated for panic and anxiety.   R. 80-81. She was claustrophobic and had anxiety attacks.   R. 59. She was depressed, and she had memory loss.   R. 59, 81.

Treatment records reflect that Earl Taitt, M.D., treated Otero for a panic disorder and depression from July 2004 through 2008.   R. 533-89.   Fredesvinda Jacobs-Alvarez, M.D., treated Otero for a panic disorder without agoraphobia, a dysthymic disorder and a generalized

anxiety disorder from October 28, 2009 through November 29, 2011.   R. 1098-1109, 1213-20.
Neither of these physicians prepared mental functional capacity assessments.

During the alleged disability period, Maryann Wharry, Psy.D., and Jeffrey Prickett,
Psy.D., prepared mental functional capacity assessments after review of Otero's records.   R. 631-
48, 705-22.   Both of these psychologists opined that Otero would have mild limitations in
activities of daily living and social functioning, moderate difficulties in concentration, persistence
or pace, and no episodes of decompensation of extended duration.   R. 641, 715.   Dr. Wharry
opined that Otero should be capable of initiating and completing routine tasks independently.
She may have periods of mild to moderate deficits in concentration, persistence or pace,
especially when under increased stress.   She is capable of going out independently and relating
appropriately with others.   Work changes may be introduced gradually, particularly in high stress
situations.   R. 647.   Dr. Prickett opined that Otero could understand, remember and carry out
simple instructions.   She could make simple decisions and do routine tasks that are within her
physical limits.   She could concentrate on simple tasks.   R. 721.

After extensive testing, Najeeb A. Zuberi, M.D., Otero's treating neurologist, did not place
any limitations on Otero's ability to function.   R. 1111-35.

Carlos Placer, M.D., treated Otero from 2008 through 2010.   R. 651-64, 1138-89.   He
observed that nerve conduction tests performed in June 2008 were normal.   R. 660. He
administered lumbar epidural steroid injections for pain and prescribed narcotic medication.   R.
659, 1173.   He indicated that Otero could return to work as tolerated.   R. 657, 1171.

Abdul Aziz, M.D., a board certified rheumatologist, treated Otero from 2008 through
2012.   R. 671-87, 1291-1301.   During the alleged disability period, he diagnosed fibromyalgia
syndrome and osteoarthritis of the spine with C7-C8 chronic radiculopathy and polyarthritis with

5

features of inflammatory arthritis.   R. 671-72, 677.   Upon examination, he observed 18 tender

points and positive paraspinal tenderness.   Nevertheless, he observed good range of motion.

*See, e.g.,* R. 671-74; *see also* R. 676 (12 tender points with good range of motion).   Dr. Aziz

treated Otero with medication.   He also discussed with Otero the role of low impact aerobic

exercise.   R. 677.[2]

On October 3, 2008, Loc Kim Le, M.D., prepared a physical functional capacity

assessment after review of Otero's records.   Dr. Le opined that she could lift up to 20 pounds

occasionally and 10 pounds frequently. She could sit and stand/walk about 6 hours in an 8-hour

workday. She could occasionally engage in postural activities.   Handling and fingering were

limited.   R. 723-30.

Javaid S. Sheikh, M.D., at the Orlando Arthritis Institute, treated Otero in October and

November 2009.   R. 1057-60.   Upon examination, he noted that power was normal in all of

Otero's muscle groups. She had full range of motion with no evidence of swelling or synovitis.

R. 1060.   Dr. Sheikh indicated that the most likely diagnosis was fibromyalgia, rather than

inflammatory arthritis or active connective tissue disease.   R. 1058.   He recommended an

aerobic exercise program among other therapies.   *Id.*

In March 2010, Otero began an occupational therapy treatment program following

hospitalization for a fall.   R. 1371-73.   As of April 20, 2010, treatment notes reflect that Otero

"demonstrated improvements with gait, balance, strength, endurance, transfers, and compliance

---

[2]   In April 2012, well after the date Otero was last insured, Dr. Aziz completed a physical functional capacity
assessment.   He opined that Otero could lift and carry up to 10 pounds frequently. Otero could sit, stand or walk one
hour total during an 8-hour work day. She did not need a cane to ambulate She had no limitations in use of her hands.
She did not drive due to seizures.   She could occasionally climb stairs and ramps, balance, stoop, and kneel but never
climb ladders or scaffolds, crouch or crawl. She could occasionally work in temperature extremes and around
vibrations, but never at unprotected heights, around moving mechanical parts or operating a motor vehicle.   These
limitations lasted or will last 12 consecutive months.   R. 1443-48.

with home exercise program."   R. 1363.   She was discharged from physical therapy having met

all of her goals.   R. 1362.

During the hearing, the ALJ asked the VE to assume a hypothetical person of Otero's

education and work experience who could do the following:

> Assume the individual would . . . require work which is simple and
> unskilled or low semiskilled, that's SVP: 3 or below.   Assume the
> individual can only lift and carry 10 pounds, stand two hours, sit six
> hours, should avoid frequent ascending and descending stairs.
> Should avoid activities requiring bilateral continuous manipulation,
> should avoid hazards in the work place, as far as postural activities,
> no climbing and occasional balancing, stooping, crouching, kneeling
> and crawling.   Assume the individual has moderate non-exertional
> mental limitations which affects her ability to concentrate upon
> complex or detailed tasks, but she would remain capable of
> understanding, remembering and carrying out simple job
> instructions.   She could make work related judgments and decision
> . . . . She could respond appropriate to supervision, she could deal
> with changes in a routine work setting. . . . Assume further the
> individual use[d] a cane.

R. 66-67.   The VE testified that this person could not perform Otero's past relevant work. R. 67.

The VE opined that this person could perform unskilled jobs requiring a sedentary level of

exertion, specifically addresser, call out operator, and surveillance system monitor, which jobs

were available in the national economy. *Id.* If the hypothetical person would miss work at least

two days a month, the VE testified that there would be no competitive employment the person

could perform.   R. 69.

## ANALYSIS.

Counsel for Plaintiff contends only that "any reasonable person would conclude that as a result of her fibromyalgia induced pain and multiple mental illnesses Plaintiff Otero is not capable of maintaining full time employment." Doc. No. 22, at 9. This is the only issue I will address.

The Commissioner correctly argues that the standard of review is not what "any reasonable person would conclude." *Id.* at 1 n. 2. Rather, this Court must determine whether the ALJ's factual findings are supported by substantial evidence, *Dyer*, 395 F.3d at 1210, and whether the ALJ applied the correct legal standards, *Lamb*, 847 F.2d at 701. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

Initially, counsel for Otero argues that the ALJ did not properly apply the pain standard used in this circuit. This standard requires (1) evidence of an underlying medication condition and either (A) objective medical evidence confirming the severity of the alleged pain arising from that condition or (B) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(per curiam)(quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in decision the issue of disability." *Id.* at

8

1561.   "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so."   *Id.* at 1561-62.

Counsel for Otero contends that objective medical evidence establishes that Otero's fibromyalgia confirms the severity of the pain arising from that condition.   In his argument, however, counsel does not point to the objective medical evidence that confirms pain that limits Otero's ability to function to the extent she testified.   The record does show that physicians treated Otero with narcotic pain medication and epidural steroid injections.   But it also shows that both Dr. Sheikh recommended that Otero engage in aerobic exercise to address her pain and other symptoms and that Dr. Aziz discussed the role low impact aerobic exercise played in a treatment plan.   And, albeit after the date last insured, Otero successfully completed a program of physical therapy.   Therefore, the argument that objective medical evidence establishes that Otero's fibromyalgia is as limiting as she reported is not well taken.

The ALJ correctly applied the pain standard in this case.   He concluded that Otero's medically determinable impairments could reasonably be expected to cause pain and other symptoms.   He found that Otero's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.   R. 26. He articulated specific and adequate reasons supported by substantial evidence in the record supporting this conclusion.   These reasons included findings on examination that Otero had good range of motion and her motor power was good.   R. 27.   He also cited Dr. Placer's indication that Otero could return to work as tolerated.   *Id.*   He also relied on Dr. Le's physical functional capacity assessment.   *Id.* Additionally, he cited the recommendation by Dr. Sheikh that Otero engage in an aerobic exercise program.   R. 28. He also noted that, after the date last insured, physical therapy notes reflect that Otero had achieved all of the goals of the therapy.   R. 30.

9

Counsel for Otero also argues that the record does not show that Otero could perform substantial gainful activity, that is work eight hours per day, five days a week.   Doc. No. 22, at 11-13.   The argument regarding Otero's physical limitations is based on speculation without citation to any evidence in the record supporting a finding that, during the alleged disability period, Otero could not perform substantial gainful activity with the RFC identified by the ALJ. Rather, Dr. Le opined that during the alleged disability period, Otero could sit and stand/walk each for six hours out of an eight-hour workday.

Counsel for Otero relies on findings by Dr. Wharry and Dr. Prickett that Otero would be limited in many functional areas as evidence that Otero could not perform substantial gainful activity.   Doc. No. 22, at 15.   These findings were made in section I of check-the-box mental functional capacity assessment forms.   Under the SSA's Program Operations Manual System ("POMS"), these check-the-box findings are merely an aid, not a functional capacity assessment. *See Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012)(per curiam) (quoting POMS DI § 24510.060(B)(2)).[3]   "After checking the boxes as an 'aid,' a doctor is then required to detail his actual RFC assessment" in section III of the form.   *Id.* (citation omitted) (quoting POMS DI § 24510.060(B)(2) & (B)(4)).   In section III of their respective mental functional capacity forms, both Dr. Wharry and Dr. Prickett opined that Otero could perform the mental demands of work, albeit with limitations.   The ALJ incorporated mental functional capacity limitations in his RFC finding.   A VE testified that, with the physical and mental limitations in the ALJ's RFC finding, there was work that Otero could perform.

---

[3] Unpublished decisions of the United States Court of Appeals for the Eleventh Circuit are cited herein as persuasive authority.

Therefore, substantial evidence in the record undermines counsel for Otero's argument that Otero could not perform substantial gainful activity.

Because the ALJ correctly applied the applicable law, and because substantial evidence supports the ALJ's findings, I recommend that the Court find that the ALJ did not err when he found that Otero was not disabled.

**RECOMMENDATION.**

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **AFFIRMED**.   I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended this 8th day of June 2015.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Courtroom Deputy Clerk
Counsel of Record